1  SCOTT D. HANDLEMAN
2  Cal. SBN 230663
   115 ½ Bartlett Street
3  San Francisco, CA 94110
   Telephone: (415) 285-6004
4  Facsimile: (415) 285-8092

   **FILED**

5
   Attorney for Petitioner
6  JERRY ELSTER

   JUL - 8 2008

7
   RICHARD W. WIEKING
   CLERK, U.S. DISTRICT COURT
   NORTHERN DISTRICT OF CALIFORNIA

8          **IN THE UNITED STATES DISTRICT COURT**

9          **FOR THE NORTHERN DISTRICT OF CALIFORNIA**
10

11 **JERRY ELSTER,**                    )
        Petitioner,                      )   No. C _____
12                                       )
                                         )   **NOTICE OF PETITION AND**
13     vs.                               )   **PETITION FOR WRIT OF HABEAS**
                                         )   **CORPUS BY A PERSON IN STATE**
14 **ROBERT AYERS, JR.,**               )   **CUSTODY UNDER 28 U.S.C. § 2254**
        Warden of San Quentin            )
15      State Prison,                    )
16      Respondent,                      )
                                         )   [California Supreme Court
17      On Habeas Corpus.                )   Case No. S162798]
                                         )
18 _____       )
                                         )   [California Court of Appeal
19 **BOARD OF PAROLE**                  )   Case No. B206602]
20 **HEARINGS, ARNOLD**                 )
   **SCHWARZENEGGER,**                  )   [Los Angeles County Superior Court
21      Governor,                        )   Case No. BH005025]
22      Real Parties In Interest.        )
                                         )
23 _____       )

24
25
26
27
28

1

## TABLE OF CONTENTS

2
TABLE OF CONTENTS………………………………………………………….i

3
4
TABLE OF AUTHORITIES……………………………………………………...ii

5
NOTICE AND PETITION FOR WRIT OF HABEAS CORPUS ………………1

6
    STATEMENT OF THE CASE…………………………………………..2

7
8
    EXHAUSTION OF STATE REMEDIES…………………………………..4

9
    STATEMENT OF FACTS………………………………………………7

10
    CLAIMS………………………………………………………………7

11
12
        Claim No. 1 (Governor's due process violation, Jan. 31, 2007)…...7

13
        Claim No. 2 (Board's due process violation, Sept. 19, 2007)……..15

14
        Claim No. 3 (Governor's due process violation, Jan. 30, 2006)…..18

15
16
    EXHIBITS……………………………………………………………..20

17
    PRAYER FOR RELIEF………………………………………………….20

18
VERIFICATION……………………………………………………………….22

19
PROOF OF SERVICE………………………………………………………….23
20
21
22
23
24
25
26
27
28

1

# TABLE OF AUTHORITIES

2

**Federal Cases**

3

4

*Biggs v. Terhune*
334 F.3d 910 (9th Cir. 2003)............................................................................. 11

5

6

*Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex*
442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979)........................ 5, 6, 14, 18, 19-20

7

8

*Irons v. Carey*
505 F.3d 846 (9th Cir. 2007).............................................................................. 11

9

10

*Superintendent v. Hill*
472 U.S. 445, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985).................. 5, 6, 11, 14, 18, 20

11

12

**State Cases**

13

14

*In re Criscione*
Santa Clara Super. Ct. No. 71614 (Aug. 30, 2007)), *app. pending*
(Cal. Ct. App., Sixth App. Dist., No. H032048)................................................. 16

15

16

*In re Dannenberg*
34 Cal.4th 1061, 23 Cal.Rptr.3d 417, 104 P.3d 783 (2005).................................. 12

17

18

**Statutes**

19

California Penal Code, § 3041(b)...................................................................... 8

20

California Penal Code, § 3041.2........................................................................ 19

21

United States Code, Title 28, § 2254...................................................................... 2

22

23

United States Code, Title 28, § 2254(d)(1)............................................. 14, 18, 20

24

United States Code, Title 28, § 2254(d)(2)............................................. 14, 18, 20

25

26

**United States Constitution**

27

Amendment 5............................................................................... 7, 15, 18

28

Amendment 14, section 1 (due process clause).................................. 5, 6, 7, 15, 18

1

2

**California Code of Regulations**

3    Title 15, § 2402(a)……………………………………………………………….….. 8

4    Title 15, § 2402(c)(1)…………………………………………………………… 16

5

6    Title 15, § 2402(d)……………………………................................................... 8

7    Title 15, § 2402(d)(8)……………………………………………………………… 17

8    Title 15, § 2405(a)(3)……………………………………………………………… 12

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  SCOTT D. HANDLEMAN
   Cal. SBN 230663
2  115 ½ Bartlett Street
3  San Francisco, CA 94110
   Telephone: (415) 285-6004
4  Facsimile: (415) 285-8092

5
   Attorney for Petitioner
6  JERRY ELSTER

7

8              **IN THE UNITED STATES DISTRICT COURT**

9          **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

10

11 **JERRY ELSTER,**                    )
              Petitioner,               )   No. C _____
12                                      )
13     vs.                             )   **NOTICE OF PETITION AND**
                                        )   **PETITION FOR WRIT OF HABEAS**
14 **ROBERT AYERS, JR.,**               )   **CORPUS BY A PERSON IN STATE**
15     Warden of San Quentin           )   **CUSTODY UNDER 28 U.S.C. § 2254**
       State Prison,                    )
16     Respondent,                      )
                                        )   [California Supreme Court
17     On Habeas Corpus.                )   Case No. S162798]
                                        )
18 _____         )
                                        )   [California Court of Appeal
19 **BOARD OF PAROLE**                  )   Case No. B206602]
20 **HEARINGS, ARNOLD**                 )
   **SCHWARZENEGGER,**                  )   [Los Angeles County Superior Court
21     Governor,                        )   Case No. BH005025]
22     Real Parties In Interest.        )
                                        )
23 _____         )

24
   TO:  ROBERT AYERS, JR., WARDEN OF SAN QUENTIN STATE PRISON,
25       RESPONDENT; EDMUND G. BROWN, JR., ATTORNEY GENERAL OF THE
26       STATE OF CALIFORNIA, COUNSEL FOR RESPONDENT; AND THE
         CLERK OF THE ABOVE-ENTITLED COURT:
27

28


*In re Jerry Elster*
PETITION FOR WRIT OF HABEAS CORPUS                              1

1    PLEASE TAKE NOTICE that prisoner Jerry Elster (hereinafter "Elster" or

2  "petitioner"), by and through his counsel, will and hereby does petition this Court,

3
4  pursuant to 28 U.S.C. § 2254, for a writ of habeas corpus.

5                          **STATEMENT OF THE CASE**

6    Elster, California Department of Corrections prisoner number C-85977, is

7
8  presently in custody at San Quentin State Prison in Marin County, California. He is

9  confined pursuant to a judgment of the Los Angeles County Superior Court in case no.

10  A396298, rendered on April 18, 1984, following his conviction for violating California

11
12  Penal Code § 187, second-degree murder, with a sentencing enhancement for personal

13  use of a firearm pursuant to California Penal Code § 12022.5. His sentence is 17 years to

14  life.

15    By operation of law, Elster became eligible for parole on June 8, 1995. The
16
17  California Board of Prison Terms, later renamed the California Board of Parole Hearings

18  (hereafter "Board"), denied him parole on six occasions between 1994 and 2003.

19    On September 13, 2005, at his seventh hearing, a Board panel found Elster
20
21  suitable for release. The panel's decision was adopted by the Board, subject to the

22  Governor's power of review. On January 30, 2006, Governor Arnold Schwarzenegger

23  (hereafter "Governor") reversed the Board's decision to release Elster on parole.
24
25    At Elster's eighth hearing, on September 6, 2006, a second panel found him

26  suitable for release. Once again, the panel's decision was adopted by the Board, subject

27  only to the Governor's power of review. On January 31, 2007, the Governor once again
28
reversed the Board's decision to release Elster on parole.

1

2

3

4

5

On September 19, 2007, at Elster's ninth parole hearing, following two years' consecutive findings of suitability, and with no negative changes in his record, the Board deemed Elster *un*suitable for release and deferred his parole consideration for another year.

6

7

8

9

10

11

12

13

14

All three of the latest decisions to deny Elster parole—the Governor's January 2006 and January 2007 decisions, and the Board's September 2007 decision—are at issue herein. Elster claims that by September 2005 at the latest, there was no evidence in the record to rationally suggest that his release would pose an unreasonable danger to society, the standard that the Governor and the Board were required to apply. Over the last three years, he contends, his constitutionally-protected liberty interest in parole has been arbitrarily and capriciously denied on three separate occasions.

15

16

17

18

Elster was represented at his September 2005, September 2006 and September 2007 parole hearings and throughout his state collateral proceedings by the Law Office of Scott Handleman, 115 ½ Bartlett Street, San Francisco, California.

19

20

21

22

23

24

25

Elster is presently serving a sentence of 17 years to life for the commitment offense. Pursuant to a judgment of the San Joaquin County Superior Court in case no. 37890, rendered on March 5, 1986, Elster has a consecutive 16 month sentence for a single violation of Penal Code § 12020, possession of a concealed weapon, received during his second year of incarceration.

26

27

28

Elster has no other petition or appeal now pending in any court, either state or federal, as to the three parole denials under attack herein. He asserts that all issues raised in this petition have been raised before state tribunals to the exhaustion of his state

*In re Jerry Elster*
PETITION FOR WRIT OF HABEAS CORPUS                                                    3

1   remedies, and he has not previously sought relief arising out of these three parole denials

2   from this Court or any other federal court.

## EXHAUSTION OF STATE REMEDIES

5   Elster litigated his claims relating to the parole denials under attack through two

6   parallel sets of collateral proceedings in the California state courts.

### Exhaustion of State Remedies as to Claim # 1 and Claim # 2[*]

9   On December 17, 2007, Elster filed a petition for writ of habeas corpus in the Los

10  Angeles County Superior Court in case no. BH005025. Elster claimed that the

12  Governor's January 2007 denial of parole and the Board's September 2007 denial of

13  parole were arbitrary and capricious, in violation of due process, because they were

14  entirely lacking in evidentiary support and rational connection between findings and

15  conclusions.

17  On February 19, 2008, the Los Angeles Superior Court, without a hearing, denied

18  the petition with a reasoned decision.

19  On March 21, 2008, Elster filed a habeas petition in the California Court of

21  Appeal, Second Appellate District, in case no. B206602, raising the identical claims that

22  he had raised in the superior court. On April 10, 2008, that court, without a hearing,

23  denied the petition without comment.

---

26  [*] Claim #1 and Claim #2 are Elster's due process claims as to the Governor's January 2007
    parole denial and the Board's September 2007 parole denial, respectively. Claim #3 is Elster's
27  due process claim with respect to the Governor's January 2006 denial of parole. Claim #3
    replicates the argument of Claim #1 with respect to arbitrary reliance on immutable factors, with
28  the additional sub-claim that the Governor exceeded the scope of his authority when exercising
    his power of review.

*In re Jerry Elster*
PETITION FOR WRIT OF HABEAS CORPUS                                              4

1

2

3

4

5

On April 18, 2008, Elster filed a petition for review to exhaust state remedies in the California Supreme Court, in case no. S162798, in which he again raised the federal claims raised in the lower courts. Elster's petition for review set forth his federal claims as follows:

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

(1)  Mandatory language in a parole statute, such as the language of Penal Code section 3041, gives rise to a liberty interest in parole which is protected by the due process clause of the Fourteenth Amendment to the United States Constitution. *Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex* 442 U.S. 1, 12, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979); U.S. Constitution, Amendment 14, § 1.  On January 31, 2007, by finding Elster to pose a danger to society, in the face of a  record that unmistakably showed him to be a rehabilitated individual who posed no threat to society, the Governor rendered a decision that lacked even a modicum of evidentiary support and was arbitrary and capricious.  As such, he violated the Fourteenth Amendment's due process guarantee that Elster's parole determination must be supported by "some evidence." *Superintendent v. Hill,* 472 U.S. 445, 456, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985).

22

23

24

25

26

27

28

(2)  On September 19, 2007, by finding Elster to pose a danger to society, in the face of a  record that unmistakably showed him to be a rehabilitated individual who posed no threat to society, the Board of Parole Hearings rendered a decision that lacked even a modicum of evidentiary support and was arbitrary and capricious.  As such, the Board violated the Fourteenth Amendment's due process guarantee that Elster's parole

determination must be supported by "some evidence." *Hill, supra,* 472 U.S. at 456; *Greenholtz, supra,* 442 U.S. at 12; U.S. Constitution, Amendment 14, § 1.

On June 18, 2008, the California Supreme Court, without a hearing, denied the petition for review without comment.

**Exhaustion of State Remedies as to Claim # 3**

On March 28, 2006, Elster filed a petition for writ of habeas corpus in the Los Angeles County Superior Court in case no. BH003937. Elster claimed that the Governor's January 30, 2006 reversal of his parole date on the basis of immutable factors in the absence of current evidence of dangerousness was arbitrary and capricious, in violation of the federal and state due process clauses. On January 31, 2007, the superior court issued an order to show cause. The state filed a response and petitioner filed a traverse. On July 23, 2007, the superior court denied the petition with a reasoned opinion.

On October 2, 2007, Elster filed a petition for writ of habeas corpus in the California Court of Appeal, Second Appellate District, Division Three, raising the same claims. The petition was denied, with a reasoned opinion addressing Elster's federal due process claim on the merits, on December 5, 2007.

On December 14, 2007, Elster filed a petition for review to the California Supreme Court, seeking review of the Court of Appeal's decision. Elster directly challenged that portion of the Court of Appeal's decision which addressed Elster's federal due process claim. The petition for review was denied without comment on February 20, 2008.

1

## STATEMENT OF FACTS

2

3

Petitioner has prepared a detailed statement of facts in the accompanying

4

Memorandum of Points and Authorities, and the same is incorporated herein by reference

5

as though set forth in full.  That statement narrates the circumstances of the commitment

6

offense, provides a detailed chronology of Elster's substantial accomplishments while

7

incarcerated, his public service efforts in prison, his educational and vocational

8

9

achievements, completion of numerous self-help programs, and his feat in avoiding

10

disciplinary rules violations for over 19 years as of this date.  In addition, the statement of

11

facts excerpts relevant portions of Elster's last three parole hearings and both of the

12

13

Governor's reversals.  The court's attention is directed to the attached Points and

14

Authorities for a full understanding of the background of this matter.

15

## CLAIMS

16

17

By the instant petition, Elster states the following grounds on which he claims he

18

is being held unlawfully:

19

### Claim No. 1

20

21

Elster's rights to due process of law under the Fifth and Fourteenth Amendments

22

to the United States Constitution were violated in January 2007 when the Governor

23

determined that he was unsuitable for parole, for the second year in a row, in the absence

24

25

26

27

28

of evidentiary support in the record and rational connection between his findings and conclusions. This claim is based on the following:[1]

1. No record evidence supported a conclusion that Elster presented an unreasonable danger to society or that "consideration of the public safety require[d] a more lengthy period of incarceration", the regulatory and statutory standard that the Governor was obligated to apply in reviewing Elster's parole suitability. Cal. Penal Code § 3041(b); accord Cal. Code Regs., tit. 15, § 2402(a). The record was replete with evidence, summarized below, that overwhelmingly and without contradiction supported the Board's finding that public safety required no further incarceration of Elster.

2. The panel granting parole in September 2006 found Elster to have eight of the nine factors favoring parole suitability set forth in California Code of Regulations, title 15, section 2402(d)—every one but battered women's syndrome. The Governor disputed only one of them.

3. At the time of his second parole grant, Elster had been incarcerated for nearly 23 years, including over 22 years in state prison, during which time he had become a model prisoner. Remarkably, he had not received a serious disciplinary citation in more than 17 years, and had not even committed a minor rules infraction in over 15 years.

4. Elster had a history of favorable mental health evaluations that militated in favor of release. As far back as 1999, a CDC-contracted psychologist stated that Elster

---

[1] As with all of Elster's claims, record citations and fuller discussions of the facts and law are submitted herewith in the corresponding sections of his memorandum of points and authorities and are supported by the accompanying exhibits. The memorandum and exhibits are incorporated by reference herein.

"would not present a potential for violence" and indeed would be likely to "flourish in society." In 2000, a CDC staff psychologist recommended him for parole. In 2005, a third CDC-contracted psychologist wrote that "there would seem to be no further purpose served by [Elster's] continued incarceration."

5. During the early years of his incarceration, Elster had distanced himself from gangs. Over the course of his incarceration, he emerged as a leader in violence prevention programs. Elster co-founded and co-facilitated No More Tears, a workshop series for prisoners preparing for community re-entry. He mentored at-risk juveniles through the Squires program. These activities earned Elster the parole recommendations of community leaders, law enforcement officers, and gang prevention workers.

6. The record further established that Elster had emerged as an acknowledged peacemaker among inmates within the prison system. As an example, Correctional Lieutenant Vernell Crittendon wrote that "following a series of violent incidences at San Quentin, [Elster] worked among the inmates calling for restraint instead of retaliation. For an inmate to take on the role of 'peacemaker' puts him at great risk of physical harm and ostracization." All told, at least five correctional officers, in addition to two police officers who knew Elster through the juvenile mentorship program, wrote to the Board in 2006 to state that society would *affirmatively benefit* from Elster's release.

7. Elster, who entered prison as a nominal high-school graduate with a seventh-grade education (as measured by test scores) had earned a GED in prison and two associates' degrees, and planned to earn a B.A. upon release.

8. Elster had obtained two vocational certifications, earned excellent work reports, and participated in a litany of self-help, group therapy and spiritual programs.

9. Elster had neither a juvenile nor an adult record for crimes of violence prior to his commission of the conviction offense. He had no history of mental illness, drug or alcohol problems.

10. Elster was sincerely remorseful for his participation in the commitment offense, and the panel so found.

11. Elster had a stable social history, and the panel so found. He had maintained contact with his mother, step-father, and siblings in Los Angeles, and forty support letters reflected his breadth and depth of support in Los Angeles and the San Francisco Bay Area.

12. Elster had realistic parole plans, and the panel so found. He planned to live with his wife, Miki Ross-Elster, a licensed Marriage and Family Therapist and youth counselor at Alameda County juvenile hall, who visited him in prison twice a week. He had a firm and realistic job offer with a defense investigative agency, multiple back-up employment plans, and a path towards an eventual career in youth counseling.

13. The panel found that Elster's prison file reflected "a long process of change that started in the early nineties and has continued with increasing frequency, depth and dedication, until today's date." It found that "maturation, growth, greater understanding and advanced age" had reduced Elster's probability of recidivism.

14. Applying the sentencing matrix of California Code of Regulations, Title 15, § 2403(c), the Board fixed Elster's base term for second degree murder at 19 years. With

*In re Jerry Elster*
PETITION FOR WRIT OF HABEAS CORPUS                                                  10

1
2
3
4

enhancements and good time credits, his total adjusted period of confinement came to 14 years and 9 months. Yet, when the Governor reversed Elster's parole date on the basis of the commitment offense, Elster had served almost 23 years in state prison.

5
6
7
8
9

15. The Governor's justifications for his decision had no rational connection to the evidence and to the conclusions drawn therefrom. In particular, the Governor justified his decision exclusively on the basis of stale, immutable factors that no longer amounted to reliable evidence of Elster's present-day dangerousness.

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

16. The Governor's primary justification for his determination that Elster was unsuitable for parole in 2007 was that the commitment offense was especially grave. But the manner in which the commitment offense was perpetrated by the 20-year-old Elster could not rationally support a finding of present dangerousness after more than 23 years, in light of the uncontroverted record evidence of the 43-year-old Elster's enormous growth and maturation since that earlier time. This conclusion is dictated by the "some evidence" standard of *Hill*, *supra*, 472 U.S. 445, and by the Ninth Circuit Court of Appeals' holdings in *Irons v. Carey*, 505 F.3d 846 (9th Cir. 2007), and *Biggs v. Terhune*, 334 F.3d 910 (9th Cir. 2003) that, after a sufficient intervening period of good conduct, a prisoner's commitment offense and other immutable factors eventually cease to constitute "some evidence" of whether the prisoner's release would pose a danger to society.

25
26
27
28

17. The Governor found that the commitment offense had been perpetrated with "exceptionally callous disregard for human suffering and life", for an "extremely trivial" motive, and was, therefore, "especially heinous." The record, however, revealed that the fatal conflict arose out of a sudden argument, that the victim reached menacingly under

*In re Jerry Elster*
PETITION FOR WRIT OF HABEAS CORPUS                                                   11

his shirt and chased Elster around two parked cars before Elster got a gun, that the victim was armed with a knife and high on PCP. Given the victim's contributory role and the sudden unfolding of events, there was nothing about the crime to qualify it as "especially heinous" when compared to other murders in the second degree.

18. In 1984, the probation officer found a mitigating factor in that "the victim was an initiator, willing participant, aggressor or provoker of the incident." At the 2006 hearing, a deputy district attorney agreed that "[t]he victim was an active participant in the crime and certainly the peer pressure contributed to this." Peer pressure is a factor in mitigation under California Code of Regulations, Title 15, § 2405(a)(3). Under the comparative analysis mandated by state regulations and the "some evidence" standard, there was no evidence that Elster's crime was aggravated relative to other second-degree murders in any way that the Governor could have lawfully relied upon to establish Elster's present dangerousness.

19. In order to rely on Elster's commitment offense to deny parole, the Governor was required by state law to identify circumstances making it particularly egregious relative to other second-degree murders. *In re Dannenberg*, 34 Cal.4th 1061, 1094-95, 23 Cal.Rptr.3d 417, 104 P.3d 783 (2005). As proof of the special egregiousness of Elster's crime, the Governor relied upon the sub-finding that Elster could have safely walked away from his retreating victim. There is no rational connection between that finding and the conclusion that Elster's crime was "especially heinous" relative to other second-degree murders, because *every single murder* necessarily involves a perpetrator who is not legitimately engaged in self-defense or defense of others at the moment of the crime.

*In re Jerry Elster*
PETITION FOR WRIT OF HABEAS CORPUS                                    12

Nor is that circumstance evidence that Elster continued to pose a danger in the year 2007 because, as the uncontroverted evidence established, he had matured considerably since 1983.

20. To establish the murder's especial heinousness, the Governor further found that Elster had endangered bystanders by firing the gun when other people were around. The Governor's reliance on this circumstance was arbitrary because (1) in the heat of the moment, disregard of the purely speculative possibility of a wounded bystander pales by comparison to the *mens rea* involved in directly shooting another human being, such that the disregard of this corollary danger cannot rationally aggravate the gravity of Elster's crime, and (2) beyond the circumstance that there were other persons in the general vicinity, there was not a shred of evidence that Elster displayed a reckless disregard as to any bystander's fate. Nor is the presence of bystanders at the crime scene rational evidence of Elster's unsuitability for parole more than 23 years later.

21. As a further example of an arbitrary finding, the Governor stated that "[t]he record contains some evidence that Mr. Elster has maintained gang ties while in prison." On information and belief, based on the Governor's revelations in the prior year's reversal of Elster's parole, the last of the confidential gang memoranda was generated in 1990—17 years before the 2007 reversal. For the Governor to describe a 17-year absence of gang allegations as evidence that Elster "has maintained" gang ties was a plainly arbitrary misstatement of the record.

22. Although he did not specify them as bases for reversing parole, the Governor recited miscellaneous facts as to Elster's very early prison misconduct, non-violent arrest

*In re Jerry Elster*
PETITION FOR WRIT OF HABEAS CORPUS                                                      13

history, and alleged history of street gang involvement. However, none of these decades-old facts rationally supported a finding of present dangerousness, in light of the uncontroverted record evidence of Elster's subsequent record of self-improvement, public service, and longstanding fealty to the law.

23. Because of the absence of some evidence in the record to support the Governor's January 2007 finding that Elster was unsuitable for parole under the pertinent standard, and because of the absence of any rational connection between the record evidence and the Governor's findings and conclusions, the California Supreme Court decision upholding the Governor's determination failed to apply or unreasonably applied clearly-established federal law as determined in *Greenholtz v. Inmates of Nebraska Penal*, 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979), which held that a parole scheme containing mandatory language, such as that of California, gives rise to a cognizable liberty interest in parole, and *Superintendent v. Hill*, 472 U.S. 445, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985), which held that due process is only satisfied if some evidence, containing sufficient indicia of reliability, supports a governmental decision resulting in the loss of an important liberty interest. Consequently, the California Supreme Court decision upholding the Governor's reversal was contrary to and/or an unreasonable application of clearly established Federal law, meeting the gateway tests of 28 U.S.C. § 2254(d)(1). In addition, the California Supreme Court decision was based on an unreasonable determination of the facts, meeting the gateway test of § 2254(d)(2).

///

*In re Jerry Elster*
PETITION FOR WRIT OF HABEAS CORPUS                                    14

1

**Claim No. 2**

2

3

4

Elster's rights to due process of law under the Fifth and Fourteenth Amendments

to the United States Constitution were independently violated in September 2007 when a

5

Board panel determined that he was unsuitable for parole in the absence of evidentiary

6

support in the record and rational connection between findings and conclusions. This

7

8

claim is based on the following:

9

1. No evidence supported a conclusion that Elster "will pose an unreasonable risk

10

of danger to society if released from prison," the pertinent regulatory standard for

11

12

granting parole that the Board was obligated to apply. The record evidence once again

13

proved, without contradiction, that public safety required no further incarceration of

14

Elster.

15

16

2. The evidence of Elster's suitability had only mounted since 2006, when the

17

prior Board panel had found him suitable for release. He had remained discipline-free for

18

18 ½ years, without even committing a minor infraction of CDC rules in over 16 years.

19

20

He had continued a robust diet of self-help and therapy programs and violence prevention

21

activities. He had continued to receive excellent work reports.

22

3. In the year since his last hearing, Elster had initiated and organized an

23

24

institution-approved event to promote prisoner coexistence, called the San Quentin Day

25

of Peace. The record showed that Associate Warden J. C. Allen, writing "on behalf of

26

San Quentin's administration", thanked Elster for his role in keeping San Quentin

27

peaceful.

28

1

4. Elster's parole plans were current, with a fresh batch of 30 support letters

2

3

documenting his prospective home, family, job offer, back-up employment plans, and

4

community support network.

5

5. The Board panel's justifications for its decision had no rational connection to

6

the evidence and to the conclusions drawn therefrom.

7

8

6. The Board's first justification for its determination that Elster was unsuitable for

9

parole in 2007 was that the commitment offense had been perpetrated in 1983 "in an

10

especially cruel and callous manner", on behalf of a motive that was "very trivial in

11

relation to the offense." However, in light of a finding of the Santa Clara County

12

13

Superior Court that "in one hundred percent of 2,690 randomly chosen cases, the Board

14

found the commitment offense to be 'especially heinous, atrocious or cruel', a factor

15

tending to show unsuitability under Title 15 § 2402(c)(1)", the Board's findings as to the

16

17

especial heinousness of Elster's offense were nothing more than meaningless boilerplate.

18

*In re Criscione* (Santa Clara Super. Ct. No. 71614 (Aug. 30, 2007)), *app. pending* (Cal.

19

Ct. App., Sixth App. Dist., No. H032048).

20

21

7. The panel did not specify facts with regards to Elster's crime that justified

22

continued denial of parole. As was true of the Governor's reversal seven months earlier,

23

the manner in which the commitment offense was perpetrated by the 20-year-old Elster

24

25

could not rationally support a finding of present dangerousness almost 24 years later, in

26

light of the uncontroverted record evidence of Elster's tremendous growth and

27

maturation.

28

1

2

3

4

5

6

7

8

8. Aside from a spurious allegation as to Elster's parole plans, all of the circumstances relied on by the Board to deny parole were at least 17 years old at the time of denying parole (except for one minor rules infraction 16 years prior). The panel's heavy weighing of these stale and immutable factors, in disregard of their temporal remoteness and the much more relevant 17 subsequent years of Elster's model conduct, was arbitrary and capricious.

9

10

11

12

13

14

15

16

9. The panel impermissibly ignored relevant evidence, in violation of due process, by discounting the favorable 2005 psychological report on the baseless grounds that the psychologist had given insufficient weight to Elster's gang association history. In fact, the psychologist cited Elster's gang affiliation four times in her report, and specifically recommended "abstinence from ... contact with gang members" in the event of Elster's parole.

17

18

19

20

21

22

23

24

25

26

27

28

10. The Board spuriously found that Elster's job offer was "vague" because it did not set forth his salary and benefits— despite the fact that it came on letterhead, was signed by the director of a reputable criminal investigations agency, promised full-time employment, and had been approved by the Board (without quarrel by the Governor) exactly one year before. The Board's derogation of Elster's employment plans was arbitrary and capricious for four reasons: (1) given that the Board and Governor had approved identical employment plans with the same agency the previous year, the Board was imposing a novel evidentiary standard for parole consideration with no notice to Elster; (2) the Board's novel specificity requirement grossly exceeded the standard set forth in California Code of Regulations, title 15, § 2402(d)(8); (3) Elster presented the

1   Board with multiple back-up options for work and job search assistance, which the Board

2   inexplicably disregarded; and (4) had the panel wished, they could have easily obtained

3

4   the desired information with a telephone call during their deliberative recess.

5       11. Because of the absence of some evidence in the record to support the Board's

6   September 2007 finding that Elster was unsuitable for parole under the pertinent

7
8   standard, and because of the absence of any rational connection between the record

9   evidence and the Board's findings and conclusions, the California Supreme Court

10  decision upholding the Board's parole determination failed to apply or unreasonably

11
12  applied the correct controlling authority of *Greenholtz, supra,* 442 U.S. 1 (1979), which

13  established that a parole scheme such as that of California gives rise to a cognizable

14  liberty interest in release on parole, and *Hill, supra,* 472 U.S. 445 (1985), which

15
16  established that due process is only satisfied if some evidence, containing sufficient

17  indicia of reliability, supports a governmental decision resulting in the loss of an

18  important liberty interest. The California Supreme Court decision was contrary to and/or

19
20  an unreasonable application of clearly established Federal law, meeting the gateway test

21  of 28 U.S.C. § 2254(d)(1), and was based on an unreasonable determination of the facts,

22  meeting the gateway test of § 2254(d)(2).

23
                                    **Claim No. 3**
24

25      Elster's rights to due process of law under the Fifth and Fourteenth Amendments

26  to the United States Constitution were violated in January 2006 when the Governor

27  determined that he was unsuitable for parole in the absence of evidentiary support in the

28

*In re Jerry Elster*
PETITION FOR WRIT OF HABEAS CORPUS                                      18

record and rational connection between his findings and conclusions. This claim is based on the following:

1. By January 2006, no evidence appeared in the record to support the conclusion that Elster "will pose an unreasonable risk of danger to society if released from prison," the pertinent regulatory standard for granting parole that the Governor was obligated to apply to him. The Governor reversed the 2005 Board's finding of suitability strictly on the basis of Elster's commitment offense, which in 2006 was no longer rationally probative of whether or not he was a danger to society, after 22 years of incarceration and 17 years' good behavior.

2. The Governor violated due process by considering facts *outside of the evidentiary record*, in blatant excess of his parole review authority, which is limited to a review of "materials provided by the parole authority." Cal. Penal Code § 3041.2. Although the granting panel explicitly stated that its record did not include confidential information, the Governor nevertheless cited confidential information— all of it 16 or more years old— in his reversal of Elster's parole date.

3. Because of the absence of some evidence in the record to support the Governor's January 2006 finding that Elster was unsuitable for parole under the pertinent standard, because of the absence of any rational connection between the record evidence and the Governor's findings and conclusions, and because of the Governor's unwarranted review of facts outside the evidentiary record, the California Supreme Court decision upholding the Board's determination failed to apply or unreasonably applied the correct controlling authority as established in the holdings of *Greenholtz, supra,* 442 U.S. 1

1   (1979), which established that a parole scheme such as that of California gives rise to a

2   cognizable liberty interest in release on parole, and *Hill, supra,* 472 U.S. 445 (1985),

3
4   which established that due process is only satisfied if some evidence, containing

5   sufficient indicia of reliability, supports a governmental decision resulting in the loss of

6   an important liberty interest. The California Supreme Court decision upholding the

7
8   Governor's January 2006 determination was contrary to and/or an unreasonable

9   application of clearly established federal law, meeting the gateway test of 28 U.S.C. §

10  2254(d)(1), and was based on an unreasonable determination of the facts, meeting the

11
12  gateway test of § 2254(d)(2).

13                                    **EXHIBITS**

14         Petitioner has concurrently lodged an Appendix with this Court containing the

15
16  documents supporting this petition and the same are incorporated herein by reference as

17  though set forth in full.

18                              **PRAYER FOR RELIEF**

19         WHEREFORE, Petitioner requests that this Court:

20
21         1.  Issue a writ of habeas corpus or order to show cause to the respondent and the

22  real parties in interest to inquire into the legality of Petitioner's incarceration, and have

23  Elster brought before it to the end that he may be discharged from his unconstitutional

24
25  sentence;

26         2.  Order that the decision of the Governor to reverse Elster's parole grant on

27  January 30, 2006 and/or the decision of the Governor to reverse Elster's parole grant on

28  January 31, 2007 and/or the decision of the Board panel to deny Elster's parole on

*In re Jerry Elster*
PETITION FOR WRIT OF HABEAS CORPUS                                          20

September 19, 2007 was unlawful, reinstate the September 13, 2005 and/or the

September 6, 2006 parole grant, and immediately release Petitioner, as Elster has already

been lawfully found suitable for parole on two occasions by the Board of Parole Hearings

and further review by the Governor or Board could not support a denial of parole;

3.  Conduct an evidentiary hearing if necessary to resolve any disputed factual

issues, and after the hearing, issue an order directing the Board to act as set forth in

paragraph 2, above; and

4.  Grant such additional relief as may be appropriate and dispose of the matter as

law and justice require.

Dated:  7/8/08                              Respectfully submitted,

                                           SCOTT HANDLEMAN
                                           Attorney for Petitioner,
                                           JERRY ELSTER

1

## **VERIFICATION**

2

3     I, SCOTT HANDLEMAN, declare as follows:

4
    I am the attorney for Petitioner in the above-entitled matter, and my practice is
5
6 located in San Francisco County. Petitioner Jerry Elster is currently in custody in Marin

7 County. Additionally, I am personally familiar with the facts and circumstances

8 underlying the present Petition. I am acting on behalf of Petitioner as his attorney, and
9
10 am authorized to sign this Verification pursuant to 28 U.S.C. § 2242. I have read the

11 foregoing Petition for Writ of Habeas Corpus and know the contents thereof. The same is

12 true of my own personal knowledge, except as to those matters stated upon my
13
information and belief, and as to those matters I believe them to be true.
14

15     I declare under penalty of perjury that the foregoing is true and correct and that

16 this declaration was executed on July $8$, 2008, at San Francisco, California.

17

18

19                             SCOTT HANDLEMAN

20

21

22

23

24

25

26

27

28

*In re Jerry Elster*
VERIFICATION                       22

**PROOF OF SERVICE BY U. S. MAIL**

Case Name: *In re Jerry Elster*, on Habeas Corpus

Court:        United States District Court, Northern District of California

Case No.:        _____

I, Scott Handleman, hereby certify that I am a resident of the County of San Francisco,

California. I am over the age of 18 and not a party to this matter. On this day,

7-8-08, I served true and correct copies of the foregoing NOTICE OF PETITION

AND PETITION FOR WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY

UNDER 28 U.S.C. § 2254; VERIFICATION; PROOF OF SERVICE by mailing copies thereof

via U.S. first-class mail, postage prepaid, to:

Office of the Attorney General
Correctional Law Unit
110 West A Street, Suite 1100
San Diego, CA  92101

I declare under penalty of perjury that the foregoing is true and correct. Executed on

7-8-08 at San Francisco, California.

Scott Handleman

*In re Jerry Elster*
PROOF OF SERVICE                                                          23