IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JERRY ELSTER,

    Petitioner,

v.

R. K. WONG, Warden of
San Quentin State Prison,

    Respondent.
_____/

BOARD OF PAROLE HEARINGS,
ARNOLD SCHWARZENEGGER,

    Governor,
    Real Parties in Interest.
_____/

No. C 08-03279 WHA

**ORDER DENYING
PETITION FOR WRIT
OF HABEAS CORPUS**

**INTRODUCTION**

Petitioner Jerry Elster was convicted of second-degree murder in 1984 and was sentenced to a term of incarceration of seventeen years to life. In this federal petition for writ of habeas corpus, he contends that he was denied due process of law when state authorities denied him parole on three separate occasions. Elster was subsequently granted parole but remains incarcerated for another offense. A prior order ruled that the petition is not moot. For the merits reasons stated below, however, Elster's petition is **DENIED**.

**STATEMENT**

In this petition for writ of habeas corpus, Jerry Elster challenges the state's decision to deny him parole on three occasions. Petitioner is an inmate at San Quentin State Prison.

1    He was convicted of second-degree murder in 1984 and sentenced to a term of incarceration
2    of seventeen years to life.  The California Board of Parole Hearings denied him parole on six
3    occasions between 1994 and 2003, denials which are not here at issue.  Petitioner challenges
4    three additional parole denials between 2005 and 2007.  Following those three denials,
5    petitioner was eventually *granted* parole on the second-degree murder conviction but he
6    remains incarcerated on a consecutive sentence imposed for a different offense.

7    The three challenged denials of parole occurred between 2005 and 2007.  In September
8    2005, at his seventh hearing, the board found Elster suitable for release subject to the
9    Governor's power of review.  In January 2006, however, Governor Schwarzenegger reversed
10   the board and denied petitioner release on parole.  In September 2006, at his eighth parole
11   hearing, the board again found Elster suitable for release subject to the Governor's power of
12   review.  In January 2007, Governor Schwarzenegger again reversed the board and denied Elster
13   parole.  In September 2007, at his ninth parole hearing, the board reversed course and deemed
14   Elster *un*suitable for release and deferred consideration of his parole for another year.  In this
15   petition, Elster contends that these three decisions to deny him parole (two by the Governor
16   and one by the board) violated his due process rights.

17   Elster has made substantial strides while in prison.  Although he had some disciplinary
18   problems in his early years in prison, including seven "CDC" citations — *i.e.*, serous rules
19   violations — he has had a clean disciplinary record for more than a decade and a half.  He has
20   distanced himself from his gang ties and, moreover, has assumed a leadership role in combating
21   gang violence, a role that has included founding two violence-prevention programs for prisoners
22   and youth.  Although he entered prison with just over a seventh-grade education (according to
23   prison testing), he has since earned a GED and two associate of arts degrees.  He has a steady
24   prison work history and has completed two vocations.

25   Following the three parole denials here at issue, in early 2009 Elster was ultimately
26   *granted* parole on the second-degree murder conviction.  Elster, however, remains incarcerated
27   on another offense.  In 1986, Elster was convicted in San Joaquin County Superior Court of
28   possession of a concealed weapon while in prison and was sentenced to a term of incarceration

1  of sixteen months, to run consecutively with his sentence for second-degree murder.  Elster is
2  currently serving his sentence for possession of a concealed weapon.
3     A June 2009 order denied a motion by the government to dismiss Elster's habeas
4  petition as moot.  It ruled that, if Elster's due process challenge to the prior sentence prevailed,
5  Elster would have served too long on the first sentence and the second sentence could be
6  reduced accordingly.  This order addresses the merits of Elster's habeas petition.

**ANALYSIS**

8  Under the Antiterrorism and Effective Death Penalty Act of 1996, habeas relief can be
9  granted only if the challenged state-court decision was "contrary to, or involved an
10 unreasonable application of, clearly established Federal law, as determined by the Supreme
11 Court of the United States," or "resulted in a decision that was based on an unreasonable
12 determination of the facts in light of the evidence presented in the State court proceeding."
13 28 U.S.C. 2254(d).
14    The phrase "clearly established" in AEDPA refers to the holdings, as opposed to the
15 *dicta*, of decisions of the Supreme Court as of the time of the relevant state-court decision.
16 *LOCKYER v. Andrade*, 538 U.S. 63, 71 (2003).  A state court's decision is "contrary to" federal
17 law if it applies an improper rule (as determined by the Supreme Court) to a question of law or
18 if it applies the correct rule incorrectly to a case involving facts "materially indistinguishable"
19 from those in the controlling decision.  A state court's decision involves an "unreasonable
20 application" of federal law if it applies the governing Supreme Court rule in a way that is
21 objectively unreasonable.  *Williams v. Taylor*, 529 U.S. 362, 405, 409–10 (2000).
22    Petitioner's claims distill to the following:  the due process clause required the state's
23 denials of parole to be supported by "some evidence" in the record, but the three challenged
24 parole decisions were not in fact supported by "some evidence" in the record.  The government
25 challenges both aspects of the claim:  it contends that, as a matter of clearly established federal
26 law, the "some evidence" standard does not apply in the parole context and, in all respects, the
27 state courts correctly found that the parole denials at issue *were* supported by some evidence in
28 the record.

3

### 1. DOES THE "SOME EVIDENCE" STANDARD APPLY?

When a state's parole system holds out the mere *possibility* of parole, *i.e.*, a mere hope that the benefit will be attained, that hope is not protected by due process. When a state's parole system creates an *expectancy* of parole, however, that expectancy constitutes a liberty interest that is entitled to some measure of constitutional protection under the due process clause. *See Greenholtz v. Inmates of Nebraska Penal and Correctional Complex*, 442 U.S. 1, 8–12 (1979).

California's parole statute, which spoke (and still speaks) in mandatory terms, created an expectancy of parole. *See* Cal. Penal Code § 3041; Cal. Code Regs, tit. 15, § 2402(a).[1] In such instances, the Supreme Court has ruled, due process requires that the state's parole system "afford[] an opportunity to be heard, and when parole is denied . . . inform[] the inmate in what respects he f[ell] short of qualifying for parole; this affords the process that is due under these circumstances. The Constitution does not require more." *Greenholtz*, 442 U.S. at 16.

Petitioner contends that the due process clause also required the state court's decisions to be supported by "some evidence" in the record and that the state's denials of his parole were not supported by some evidence. The government responds that, although the "some evidence" standard governs certain due process claims, under AEDPA the "some evidence" standard was not clearly established in the parole context. The Ninth Circuit has held, however, that under AEDPA, clearly established federal law *did* require that a parole denial be supported by "some evidence." *Irons v. Carey*, 505 F.3d 846, 851 (9th Cir. 2007). This order is not free to revisit that determination. The state's parole denials were required to be supported by some evidence in the record.

---

[1] The statute provides, for example, that "The board *shall* establish criteria for the setting of parole release dates and in doing so shall consider the number of victims of the crime for which the inmate was sentenced and other factors in mitigation or aggravation of the crime." Cal. Penal Code § 3041(a). It further provides that "The panel or the board, sitting en banc, *shall* set a release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for this individual." *Id*. at 3041(b).

4

**2.    THE PAROLE DENIALS.**

Federal courts review the last-reasoned state court decision to deny the habeas claim. *Ylst v. Nunnemaker*, 501 U.S. 797, 803–04 (1991).  Here, both sides agree, because the California Supreme Court denied Elster's state habeas petition without comment, the last reasoned decision concerning the Governor's first (*i.e.*, January 2006) rejection of his parole was the order of the California Court of Appeal dated December 5, 2007, finding that some evidence supported the Governor's decision.  The last reasoned decision regarding the Governor's second (*i.e.*, January 2007) parole denial and the board's September 2007 rejection of parole was the Los Angeles County Superior Court's order dated February 19, 2008, finding that some evidence supported those determinations (Ans. Exh. D, H).  This order therefore reviews those two decisions to determine whether they were contrary to, or an unreasonable application of, clearly established federal law.

Petitioner contends that neither of these decisions were supported by "some evidence" in the record.  The Supreme Court described the "some evidence" standard as follows:

> Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence.  Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.

*Superintendent, Massachusetts Correctional Institution v. Hill*, 472 U.S. 445, 455–56 (1985).

**A.    December 2007 Decision.**

In its order dated December 5, 2007, the California Court of Appeal explained that the Governor's first (*i.e.*, January 2006) rejection of Elster's parole was based on the circumstances of Elster's offense of conviction.  The regulations governing parole stated that "[t]he panel shall first determine whether the life prisoner is suitable for release on parole.  Regardless of the length of time served, a life prisoner shall be found unsuitable for and denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison." Cal. Code Regs, tit. 15, § 2402(a).  The regulations set forth certain "circumstance tending to show unsuitability" and "circumstances tending to show suitability." The first enumerated circumstance tending to show unsuitability was the following:

5

> (1) Commitment Offense. The prisoner committed the offense in an especially heinous, atrocious or cruel manner. The factors to be considered include:
>
>> (A) Multiple victims were attacked, injured or killed in the same or separate incidents.
>>
>> (B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder.
>>
>> (C) The victim was abused, defiled or mutilated during or after the offense.
>>
>> (D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.
>>
>> (E) The motive for the crime is inexplicable or very trivial in relation to the offense.

*Id.* at § 2402(c).

As stated, the first of the Governor's challenged unsuitability determinations emphasized the circumstances of the commitment offense. The December 2007 decision of the California Court of Appeal explained the offense as follows. Petitioner shot and killed a rival gang member in 1983. Petitioner and the victim argued. The victim, who was under the influence of narcotics, was armed with a knife. Petitioner initially fled but then obtained a gun from a fellow gang member. He shot twice at the victim, missing both times. He then threatened the victim: "I missed you once. If you keep coming, I'm not going to miss you again." The victim turned and walked away but threatened to return. Petitioner's fellow gang members urged him not to let the victim depart. Petitioner fired three more times at the retreating victim, killing him. Petitioner admitted at the parole hearing that, although he was scared of the victim during the incident, he was also motivated by not wanting to look bad in front of his fellow gang members (Ans. Exh. D at 1–2).

The Court of Appeal concluded that these circumstances constituted "some evidence that the crime was sufficiently heinous to justify the Governor's decision." It reasoned, based on prior California decisions, that a parole denial *may* be based *solely* on the commitment-offense factor if the circumstances of the crime were particularly heinous when compared to the minimum necessary to convict. It emphasized that petitioner warned the victim to leave and,

6

when the victim heeded his warning, shot the retreating man to impress his fellow gang members.

Petitioner nevertheless contends that the Governor's unsuitability determination was unsupported by *any* evidence in the record. *First*, petitioner contends that some evidence of a single unfavorable factor was not enough. He argues that, even if some evidence supported a determination that the offense was especially heinous, atrocious or cruel, the Governor's determination was irrational based on the record as a whole. He relies on a decision of the California Supreme Court which held: "that the circumstance that the offense is aggravated does not, in every case, provide evidence that the inmate is a current threat to public safety." *In re Lawrence*, 44 Cal.4th 1181, 1213 (2008). As explained, the Court of Appeal's decision relied on state authority to the effect that a parole denial *may* be based solely on the nature of the offense in appropriate circumstances, and it concluded that petitioner's offense presented such circumstances. At best, the rule appears unsettled under California law. In all respects, petitioner fails to establish that the rule he urges is clearly established under *federal* law as determined by the Supreme Court of the United States. Under clearly established federal law, where "some evidence" supports the parole denial, this order is not free to re-weigh the evidence in the record and reach a conclusion different than that reached by the state authorities. The California parole rules indicated that an "especially heinous, atrocious or cruel" offense was evidence of unsuitability. The California authorities determined that the offense was especially heinous, and the record contains evidence of such aggravating factors. "Some evidence" supported the parole denial.

*Second*, petitioner contends that evidence of bad character many years ago eventually ceases to prove a person's current proclivities and that the state erred by relying on "dated" facts. For this proposition, petitioner relies predominantly on state and Ninth Circuit decisions. Two Ninth Circuit decisions have ruled, for example, that "in some cases, indefinite detention based solely on an inmate's commitment offense, regardless of the extent of his rehabilitation, will at some point violate due process." *Irons v. Carey*, 505 F.3d 846, 854 (9th Cir. 2007). *See also Biggs v. Terhune*, 334 F.3d 910, 916 (9th Cir. 2003) (similar). Both decisions, however,

7

1  *rejected* a habeas petition challenging the denial of parole; both decisions made these statements
2  only in *dicta*.[2] AEDPA requires, moreover, that the state's decision was "contrary to,
3  or involved an unreasonable application of, clearly established Federal law, *as determined by the*
4  *Supreme Court of the United States*."

5  Petitioner cites only one Supreme Court decision for his proposition that the evidence of
6  the especially heinous nature of the offense was outdated. The decision, however, is inapposite.
7  It overturned a state Board of Bar Examiners' denial (on moral character grounds) of an
8  application to take the bar examination. Granted, the decision noted that certain twenty-year old
9  evidence — evidence of the use of aliases — was insufficient to support the state's finding of
10 bad moral character. The decision so ruled, however, because "the[] aliases were adopted so
11 [appellant] could secure a job in businesses which discriminated against Jews in their
12 employment practices and so that he could more effectively organize non-Jewish employees
13 at plants where he worked." *Schware v. Board of Bar Exam. of State of N.M.*, 353 U.S. 232,
14 240–41 (1957). In other words, the decision found that the evidence was of only limited
15 probative value as to bad moral character irrespective of the fact that the evidence was "dated."
16 Here, in contrast, the evidence at issue is certainly probative of unsuitability — California's
17 parole rules specifically render evidence of the heinousness of the offense pertinent to the issue
18 of unsuitability. As respondent emphasizes, moreover, the Supreme Court has disapproved of
19 reliance under AEDPA on a rule governing a different, but arguably analogous, situation than
20 that presented by the petition; it is unclear whether *Schware* (even if relevant) could govern this
21 petition. *See Carey v. Musladin*, 549 U.S. 70, 76 (2006).

22 For these reasons, clearly established federal law does not establish that evidence of
23 the heinous nature of an offense eventually becomes stale under the due process clause nor
24 where that point might be, much less that the evidence here at issue was in fact too "dated."
25 The December 2007 decision of the California Court of Appeal was not "contrary to, or . . . an

---

28 [2] *Irons* reversed a district court decision that had granted a habeas petition, while *Biggs* affirmed the denial of a habeas petition.

8

1  unreasonable application of, clearly established Federal law, as determined by the Supreme
2  Court of the United States."[3]

### B.     February 2008 Decision.

As stated, the applicable decision regarding the Governor's second (*i.e.*, January 2007) rejection of parole and the board's September 2007 rejection of parole was the Los Angeles County Superior Court's decision dated February 19, 2008. Those two adverse parole determinations, the decision ruled, were based on "several factors." A primary factor, once again, was the especially heinous nature of the offense. The decision further explained that, under California's parole regulations, serious misconduct in prison is also an adverse suitability factor. *See* Cal. Code Regs, tit. 15, § 2402(c)(6). Although Elster's record had been clean for many years, the decision explained, in his early incarceration Elster was associated with a prison gang; had been cited for serious rules violations several times for fighting and violence, including once for stabbing in 1985; and was convicted of possession of a weapon while incarcerated.[4] The decision reasoned that "[a]lthough petitioner has made great improvement in his behavior recently, the Board found that due to his violent start in prison, he needs to maintain his gains for a longer period of time."

Petitioner challenges the decision on grounds similar to those described above — challenges which must fail for the above-described reasons. Petitioner also protests that the parole board had reversed itself and, relying on no *new* current evidence, found petitioner *un*suitable for parole when it had previously found him suitable for parole. Although this claim is sympathetic, petitioner cites no authority stating that the board was bound by its earlier suitability determinations. Indeed, California's parole system affords the parole officials

---

[3] Petitioner also challenges the Governor's January 2006 parole denial on the grounds that the Governor relied in part on evidence outside of the pertinent record. Whether or not the *Governor* did so, the California Court of Appeal found that the Governor's decision was supported by "some evidence" due to evidence in the record alone — the heinous nature of the offense itself. That decision was not "contrary to, or involved an unreasonable application of, clearly established Federal law."

[4] Elster disputes that he did in fact stab anyone in 1985 and contends that the documentation of the incident merely stated that he was "involved" in a stabbing but did not stab anyone. He does not, however, present the documentation to support this claim, and this order is therefore unable to overturn the factual findings of the September 2007 report. In all respects, neither the conclusions herein nor the conclusions of the September 2007 decision relied on the stabbing alone.

9

substantial discretion. Where "some evidence" in the record supported the board's determination, that determination was not contrary to, or an unreasonable application of, clearly established federal law merely because the board *could* have reached — and in this instance *did* in fact reach — a different conclusion. The Superior Court's decision was not "contrary to, or . . . an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."

## CONCLUSION

For the reasons stated above, Elster's petition for writ of habeas corpus is **DENIED**. The Clerk shall enter judgment and close the file.

**IT IS SO ORDERED.**

Dated: June 12, 2009.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE